UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00444-MOC-DCK

| | |
|---|---|
| **NCR CORPORATION,** | ) |
| Plaintiff, | ) ) ) |
| Vs. | ) **ORDER** ) |
| **DOUGLASS JONES,** | ) ) ) |
| Defendant. | ) |

**THIS MATTER** is before the court on the parties' cross motions for summary judgment on Count II of the Complaint. See (## 17, 20).[1] This matter has been fully briefed and is ripe for review. The court heard oral arguments on the motions on December 16, 2015. Having considered the applicable legal authority and the arguments of counsel, the court enters the following Order.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff NCR is a computer software and electronics company with its principal place of business in Georgia. On or around July 2013, Plaintiff NCR made a conditional offer of employment to Defendant Jones to provide field maintenance services to NCR customers in and around Raleigh, North Carolina. (Answer (#14) at ¶ 17). In connection with that conditional offer, NCR procured a consumer report (i.e., a background check) on Jones. (Id. at ¶ 18).

---

[1] The Complaint (#1) asserted in this matter asserted two counts. Count I sought a declaration that this court, and not an arbitrator, must determine whether the parties' agreement authorizes class arbitration. Count I is no longer at issue in this case because Defendant has stipulated to the relief sought by Plaintiff in Count I. See (#15 at p. 2) (parties' Joint Rule 26(f) Report and Discovery Plan setting forth Defendant's stipulation under Count I that this court, not an arbitrator, should resolve whether the parties' agreement authorizes class arbitration).

-1-

Nothing in the background report altered NCR's decision to offer employment to Defendant, and NCR thereafter hired Defendant. (Id. at ¶ 19). Approximately nine months later, on or around April 7, 2014, Defendant resigned from employment with NCR. (Id. at ¶ 21).

On June 15, 2014, Defendant and another former NCR employee, Chris Goh ("Goh"), jointly filed a class arbitration against NCR in Seattle, Washington, asserting that NCR did not satisfy the disclosure and authorization requirements of the Fair Credit Reporting Act, 15 U.S.C. § 1681a et seq. ("FCRA")[2], with respect to the background reports NCR procured about Defendant and Goh. (Id. at ¶ 22). The demand purported to assert Defendant's and Goh's individual claims for violation of FCRA, as well as the claims of a purported class of similarly-situated individuals. (Id. at ¶ 23).

NCR denied the allegations in the Seattle Arbitration and denied that the arbitration agreements with Defendant and Goh authorized class arbitration. Because Defendant worked for NCR in Raleigh, and because his arbitration agreement requires that venue for arbitration of his claims must be "in or near the city where [Defendant] worked with NCR," NCR also asserted that venue in Seattle was improper with respect to Defendant's claims. (#1-3 at ¶ 3). Defendant removed himself from the pleadings in the Seattle Arbitration and filed his own class action arbitration against NCR in Charlotte, North Carolina (the "Charlotte Arbitration"), (#14 at ¶¶ 25, 27), which is the arbitration at issue in this case. Defendant claims that NCR's disclosure to him did not comply with FCRA's disclosure requirement and alleges that the disclosure contained

---

2 Under FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless-- (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). Defendant claims that NCR did not provide Jones with the required disclosure "in a document that consists solely of the disclosure" prior to procuring it.

additional "extraneous information" that is improper under FCRA. See (#1, Ex. A at ¶¶ 29-30). Defendant purports to assert that claim individually, and on behalf of a putative class of similarly-situated individuals. (Id. at ¶ 73).

After receiving Defendant's demand in the Charlotte Arbitration, NCR filed this action seeking two declaratory judgments pursuant to 28 U.S.C. § 2201. See (#1). The parties have stipulated to Count I, agreeing that this court, not an arbitrator, should determine whether the arbitration agreement between Plaintiff and Defendant contains an agreement to arbitrate the claims of the non-party putative class members. See (#15 at p. 2). Count II seeks a declaration that the arbitration agreement at issue in this case does not contain an agreement to arbitrate class claims. Accordingly, the issue before the court is whether the parties agreed to arbitrate the claims of the non-party class members.

## II.  LEGAL STANDARDS

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal

citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252. When, as here, the court reviews cross-motions for summary judgment, "each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." Mellen v. Bunting, 327 F.3d 355, 363 (4th Cir. 2003) (citing Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003)).

### B. Arbitration Agreements

The Supreme Court has stated "on numerous occasions that the central or 'primary' purpose of the [Federal Arbitration Act] is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682

(2010) (internal citations and quotation marks omitted). "[P]arties are 'generally free to structure their arbitration agreements as they see fit,'" id. (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995)), and "may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes…The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (internal citations and quotation marks omitted). Crucial to the parties' dispute here, the Supreme Court has clearly held that the consent of the agreeing parties is an essential component of interpreting arbitration agreements. See Stolt-Nielsen, 559 U.S. at 681. ("While the interpretation of an arbitration agreement is generally a matter of state law the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'") (citations omitted). Construing an arbitration agreement requires an examination of "the arbitration agreement itself or some background principle of contract law that would affect its interpretation." AT&T Mobility, 563 U.S. at 347. See also Stolt-Nielsen, 559 U.S. at 684 ("It falls to courts and arbitrators to give effect to these contractual limitations [of arbitration agreements], and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties.") Accordingly, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Stolt-Nielsen, 559 U.S. at 684 (emphasis in original). The interpretation of arbitration agreements is governed by state rules of contract interpretation. Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 699 (4th Cir. 2012) (noting that construction of arbitration agreements "is a matter of contract

interpretation governed by state law."). Because North Carolina is the forum for this action and the state in which Defendant executed the arbitration agreement, North Carolina's rules of contract interpretation govern the court's interpretational analysis. See Mastrobuono, 514 U.S. at 63, n.9 (1995) (applying law of forum state and state where arbitration agreement was executed). Such rules require an agreement to be construed as a whole and to determine the intent of the parties "from the entire instrument and not from detached portions." Int'l Paper Co. v. Corporex Constructors, Inc., 385 S.E.2d 553, 555 (N.C. Ct. App. 1989).

Under North Carolina contract law, "[t]he essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." Snyder v. Freeman, 266 S.E.2d 593, 602 (N.C. 1980). Additionally, "[i]t is essential to the formation of any contract, including an implied-in-fact contract, that there be mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds. To establish mutual assent one looks not to some express agreement but to the actions of the parties showing an implied offer and acceptance." Tec Rep Servs., Inc. v. Dearborn Tool & Mfg., Inc., No. 3:10-CV-647-RJC-DCK, 2012 WL 171372, at *7 (W.D.N.C. Jan. 20, 2012) (citing Creech v. Melnik, 495 S.E.2d 907 (N.C. 1998)). In interpreting a contract, the court must read "the contract itself for indications of the parties' intent at the moment of execution. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract….Intent is derived not from a particular contractual term but from the contract as a whole." State v. Philip Morris USA Inc., 618 S.E.2d 219, 225 (N.C. 2005) (internal citations and quotation marks omitted).

Regarding contracts that do not explicitly mention class arbitration, the Supreme Court has instructed that while it is possible for parties to implicitly agree to class-action arbitration,

> An implicit agreement to authorize class-action arbitration…is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.

Stolt-Nielson, 599 U.S. at 685. For example, bilateral arbitration allows the agreeing parties to "forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." Id. However, the benefits of class arbitration are "much less assured." Id. Some essential differences between bilateral and class arbitration include allowing the arbitrator to resolve "many disputes between hundreds or perhaps even thousands of parties" instead of "a single dispute between the parties," abandoning the presumption of privacy and confidentiality required in most bilateral arbitrations, adjudicating the rights of absent parties, and heightening the commercial stakes of litigation while greatly limiting the scope of judicial review. Id. at 686-87. See also AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 347-48 (2011) ("Classwide arbitration includes absent parties, necessitating additional and different procedures and involving higher stakes. Confidentiality becomes more difficult. And while it is theoretically possible to select an arbitrator with some expertise relevant to the class-certification question, arbitrators are not generally knowledgeable in the often-dominant procedural aspects of certification, such as the protection of absent parties."). In sum, "the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." Stolt-Nielsen, 559 U.S. at 687. Therefore, the court will not construe the

Agreement at issue to allow class arbitration absent any agreement to so participate.

While the Fourth Circuit has not yet had an opportunity to address the precise issue of silence in an arbitration agreement as to class arbitration[3], the court notes that the appellate courts that have weighed in on the issue of implicit authorization of class arbitration are somewhat divided. The Second Circuit, for example, in Jock v. Sterling Jewelers Inc., 646 F.3d 113 (2d Cir. 2011), upheld an arbitrator's determination that a broadly-worded arbitration agreement allowed for class arbitration[4] and reiterated that "Stolt–Nielsen did not hold that the intent to agree to arbitration must be stated expressly in an arbitration agreement." Id. at 125-26. The court notes, however, that Jock arose before the Second Circuit on a review by a district court of an arbitrator's determination. See id. at 115 ("The issue presented by this appeal is whether a district court has the authority to vacate an arbitration award where it believes that the arbitrator improperly interpreted the terms of an arbitration agreement."). Review of an arbitrator's decision involves a very different standard of review than that required in the instant

---

3 The court notes that Bird v. Turner, No. 5:14CV97, 2015 WL 5168575, at *10 (N.D.W. Va. Sept. 1, 2015) is currently on appeal before the Fourth Circuit. Bird addressed very similar facts as those presented here and ultimately determined that the arbitration agreement did not encompass class arbitration in light of the fact that the agreement did not mention class arbitration and only referenced bilateral disputes arising out of "this lease."

4 The Second Circuit noted therein:

> It is clear from the terms of the arbitration agreement that Sterling required its employees to sign that the parties intended to make available in arbitration all remedies and rights that would otherwise be available in court or before a government agency. It was not unreasonable, and clearly not manifestly wrong, for the arbitrator to construe this to mean that the parties also intended to include the right to proceed as a class and seek class remedies. To read that right out of the arbitration agreement would fail to give effect to the employees' contractual rights and expectations of what the arbitration agreement provides.

Jock v. Sterling Jewelers Inc., 646 F.3d 113, 127 (2d Cir. 2011)

case, which is a matter of de novo contract interpretation. Indeed, as acknowledged by the Second Circuit in Jock,

> The focus of our inquiry in challenges to an arbitration award under section 10(a)(4)[5] is whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue....We will uphold an award so long as the arbitrator offers a barely colorable justification for the outcome reached....In other words, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision.

Jock v. Sterling Jewelers Inc., 646 F.3d 113, 122 (2d Cir. 2011) (citations and quotation marks omitted) (emphasis in original). Thus, though informative, Jock is neither controlling nor completely persuasive in this court.

In addition to the Second Circuit, the First Circuit has also "reject[ed] the … precept…that there must be express contractual language evincing the parties' intent to permit class or collective arbitration. Stolt–Nielsen imposes no such constraint on arbitration agreements." Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd., 683 F.3d 18, 22 (1st Cir. 2012) (citing Jock). The Third Circuit has also noted that "Stolt–Nielsen did not establish a bright line rule that class arbitration is allowed only under an arbitration agreement that incants 'class arbitration' or otherwise expressly provides for aggregate procedures." Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 222 (3d Cir. 2012), as amended (Apr. 4, 2012), aff'd, 133 S. Ct.

---

5 The FAA provides the following grounds for vacating an arbitration award:
  (1) where the award was procured by corruption, fraud, or undue means;
  (2) where there was evident partiality or corruption in the arbitrators, or either of them;
  (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
  (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

2064, 186 L. Ed. 2d 113 (2013). However, the Sixth Circuit has noted that a lack of any mention in an arbitration agreement as to class arbitration weighs against finding that such agreement permits class arbitration. See Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett, 734 F.3d 594, 599 (6th Cir. 2013) ("The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it."). See also Eshagh v. Terminix Int'l Co., L.P., 588 F. App'x 703, 704 (9th Cir. 2014) (unpublished opinion affirming district court decision striking class claims but compelling bilateral arbitration according to agreement, which did not contain terms regarding to class arbitration). Many district courts confronted with the issue presented here have likewise found that silence on the matter of class arbitration generally indicates that the agreement does not allow class arbitration. See, e.g., Opalinski v. Robert Half Int'l Inc., No. CV 10-2069, 2015 WL 7306420, at *4 (D.N.J. Nov. 18, 2015) (hereinafter "Opalinski II") (collecting cases and noting that district courts in California, Ohio, Florida, New York, and Alabama have all recently "reject[ed] classwide arbitration where the agreement does not mention class arbitration."); Bird v. Turner, No. 5:14CV97, 2015 WL 5168575, at *9 (N.D.W.Va. Sept. 1, 2015) ("the arbitration agreement does not mention class arbitration. In fact, the arbitration agreement is put in terms of bilateral disputes …therefore…the parties did not consent to class arbitration but only to bilateral arbitration."); Alixpartners, LLP v. Brewington, No. 14-CV-14942, 2015 WL 8538089, at *6 (E.D. Mich. Dec. 10, 2015).

**III.    DISCUSSION**

The parties agree that there are no genuine issues of material fact in dispute in this case. The arbitration agreement signed between Plaintiff and Defendant provides, in relevant part:

> This agreement to arbitrate includes every possible claim (other than workers compensation claims or claims for benefits covered by the Employee Retiree

> Income Security Act) arising out of or relating in any way to my employment. This includes but is not limited to all claims for any form of illegal discrimination under state or federal law, improper or unfair dismissal, and all tort claims.
>
> …
>
> We intend for this Agreement to be interpreted broadly to allow arbitration of as many disputes as possible.

See (#1-3). The Agreement does not explicitly mention classwide arbitration. Id.

Plaintiff argues that class arbitration is not authorized by the agreement and presents three arguments in support of its position. First, Plaintiff notes that the agreement nowhere mentions class claims or class litigation. Though true, the absence of such terms in the Agreement is not dispositive of Plaintiff's argument in light of Supreme Court precedent allowing class arbitration to be read implicitly in arbitration agreements. See Stolt-Nielson, 559 U.S. at 685. Thus, the question for the court becomes whether the parties implicitly agreed to classwide arbitration under the principles of North Carolina contract law. To that effect, Plaintiff argues that because the Agreement describes the claims subject to arbitration in bilateral terms— i.e. claims arising from Defendant's employment relationship with NCR—it cannot govern the absent class members' claims received in connection with their applications for their own employment with NCR. Plaintiff therefore argues that the third-parties' class claims fall outside the agreement to arbitrate disputes arising from "[Defendant's] employment." On this point, the court notes that many other courts have found that the bilateral terms used in arbitration agreements weigh against finding authorization of class arbitration. See, e.g. Reed Elsevier, 734 F.3d at 599 (finding that secondary reason for concluding that the arbitration agreement does not authorize classwide arbitration stemmed from the fact that the clause limits its scope to claims "arising from or in connection with this Order," as opposed to other customers' orders.);

-11-

Opalinski II, 2015 WL 7306420, at *6 ("When arbitration agreements limit claims to those arising out of the relationship between the contracting parties, as is the case here, they generally do not authorize class arbitration of absent parties' claims.") (collecting cases); Herzfeld v. 1416 Chancellor, Inc., No. CIV.A. 14-4966, 2015 WL 4480829, at *8 (E.D. Pa. July 22, 2015) ("the [arbitration] Agreement does not expressly or implicitly evidence an agreement for collective or class arbitration. The [arbitration] Agreement refers only to arbitration affecting 'both parties.' It does not mention other parties of any type. Under standard contract principles, there is no 'meeting of the minds' on this monumental change to the parties' agreement.") (citations omitted); Bird, 2015 WL 5168575, at *9. While the court recognizes that the contract only references Defendant's (and not any other employee's) agreement to arbitrate, it also notes that, as Defendant pointed out at the hearing, contracts are generally written in terms binding only the signing parties. Ultimately, however, the court finds that the exclusively bilateral terms in the face of the contract weigh in favor of the Agreement only covering bilateral disputes.

Finally, Plaintiff argues that the arbitration procedures set forth in the parties' Agreement are inherently inconsistent with class arbitration. Plaintiff contends that the provisions regarding venue and arbitrator selection in the Agreement conflict with the rules and procedures governing arbitration. Regarding venue, the parties agreed to arbitrate an employee's claims "in or near the city" where the employee works or worked. See (#1-3 at ¶ 3). Plaintiff therefore argues that the Agreement does not contemplate a claimant aggregating individual claims of a nationwide class of NCR employees in one particular venue. As Defendant notes, venue in class actions differs from venue in a traditional case. As explained by the Court of Appeals for the D.C. Circuit:

> The central function of venue generally is to regulate the forum in which a party may appear or may force another party to appear personally, in a suit in which the

> court would otherwise have jurisdiction. In the ordinary case, the party has been brought personally before the court, by service of process or by filing the action, and the only question is whether the court sits in the proper district (as defined by the venue statutes) to hear the case. Venue is therefore intimately connected to and predicated upon the personal appearance of the party. Because class actions do not necessarily require the presence of a class member before the court for an adjudication of his/her rights and liabilities, venue restrictions are not determinative of the ability of the court to hear the action with respect to all members of the class….the relevant venue question in such circumstances is whether venue is proper as among the parties who have in fact been brought personally before the court as named parties to the action, the parties representing and in effect standing in for the absent class members.

United States v. Trucking Emp., Inc., 72 F.R.D. 98, 100 (D.D.C. 1976). Thus, the court does not find that the venue provision completely forecloses the possibility of class arbitration. However, the court does believe that the venue provision in the Agreement at least evinces an intent on behalf of the parties to arbitrate disputes solely on an individual basis in or near the city where each employee works, which weighs against the Agreement encompassing class arbitration.

Regarding arbitrator selection, Plaintiff notes that by the terms of the Agreement, both Plaintiff and Defendant have the right "to delete up to three" of the seven arbitrators proposed by the American Arbitration Association.  See (#1-3 at ¶ 3). Plaintiff argues that class arbitration would allow Defendant to usurp the absent class members' right to play a role in selecting who will adjudicate their claims, which is inconsistent with the principle that arbitration is a matter of consent. Defendant responds that no such inconsistency exists, noting that Defendant will only be able to proceed in class arbitration if he shows that he is an adequate class representative and that he and his counsel will fairly and adequately protect the interests of the class. See Def. Resp. (#24) (citing AAA Supplementary Rules for Class Arbitration at p. 2 (available at https://www.adr.org/aaa/ShowPDF?url=/cs/groups/commercial/documents/document/dgdf/mda0/~edisp/adrstg_004129.pdf (last accessed Dec. 21, 2015)). Defendant also notes that the

Agreement includes a severability clause, and argues that any unenforceable terms can be disregarded. Having considered the matter, the court does not believe that the issue of the arbitrator selection clause weighs heavily in either party's favor, but finds that it does, at the least, indicate an intent on behalf of both parties to resolve disputes on an individual basis and in conformance with the arbitration procedures described in the contract. Furthermore, the court does not find the clause unenforceable or inconsistent with the Agreement as a whole and therefore finds no reason to strike it.

Defendant presents several arguments in support of reading the Agreement to encompass class arbitration. Defendant contends that the plain language of the Agreement provides for class arbitration because it is intended to be construed broadly to cover "*every possible claim*…arising out of or *relating in any way* to [Defendant's] employment," and states that the parties "intend for this Agreement to be interpreted broadly to allow arbitration of *as many disputes as possible*." See (#1-3). Second, Defendant argues that because the Agreement plainly excludes workers compensation and ERISA disputes from arbitration, but does not make any other exclusion, it does not exclude class arbitration. Third, Defendant underscores the contract's overall purpose of recognizing the parties' mutual willingness to arbitrate, and argues that such intent weighs in favor of finding that the Agreement does encompass class arbitration. Finally, and in the alternative, Defendant argues that the agreement is ambiguous but that it implicitly authorizes class arbitration.

First, as to Defendant's arguments that the stated intent of the agreement to be construed broadly means that the Agreement encompasses class arbitration, the court has considered the terms of the contract as a whole. While the terms of the Agreement do indeed state that it should

be read as broadly as possible, Defendant cannot escape the fact that the Agreement is limited to disputes arising out of his, and only his, employment with Plaintiff. Given this court's duty to determine the intent of the parties from the document as a whole, it cannot find that the agreement is intended to cover claims arising out of <u>other employees'</u> relationships with Plaintiff. Defendant's argument as to a broad reading of the Agreement fails to sway the court in Defendant's favor.

Defendant also attempts to argue that the Supreme Court's decision in <u>Oxford Health Plans LLC v. Sutter</u>, 133 S. Ct. 2064 (2013) stands for the proposition that a broadly-worded arbitration agreement such as the one at issue here can be read to encompass class arbitration without expressly mentioning class arbitration. <u>See</u> (Def. Resp. (#24) at p. 12-13) (noting that the Supreme Court upheld the arbitrator's determination that the arbitration agreement covering "any" and "all" disputes covered class arbitration). However, <u>Oxford Health</u> is readily distinguishable from the instant case. In <u>Oxford Health</u>, the Supreme Court was confronted with limited judicial review of an arbitrator's decision, and was asked to determine whether the arbitrator had exceeded his authority in determining the meaning of an arbitration agreement. <u>See Oxford Health</u>, 133 S. Ct. at 2068. Notably (and in stark opposition to the facts here), the parties had agreed that the arbitrator, not a court, should determine the contract. <u>Id.</u> In upholding the arbitrator's decision, the Court explained,

> As we have held before, we hold again: It is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his. The arbitrator's construction holds, however good, bad, or ugly.
>
> In sum, Oxford chose arbitration, and it must now live with that choice. Oxford agreed with Sutter that an arbitrator should determine what their contract meant,

> including whether its terms approved class arbitration. The arbitrator did what the parties requested: He provided an interpretation of the contract resolving that disputed issue.

Id. at 2070-71 (citations and quotation marks omitted). Additionally, the Court explicitly stated that its decision should not be read as an endorsement of the arbitrator's determination by noting, "[n]othing we say in this opinion should be taken to reflect any agreement with the arbitrator's contract interpretation." Id. at 2070. See also id. at 2071 ("If we were reviewing the arbitrator's interpretation of the contract de novo, we would have little trouble concluding that he improperly inferred '[a]n implicit agreement to authorize class-action arbitration ... from the fact of the parties' agreement to arbitrate.'") (quoting Stolt-Nielson, 559 U.S. at 685) (Alito, J., concurring). Thus, Defendant's arguments under Oxford Health are unavailing. See Bird v. Turner, No. 5:14CV97, 2015 WL 5168575, at *9 (N.D.W. Va. Sept. 1, 2015) (distinguishing Oxford Health based on procedural posture and question presented); Opalinski II, 2015 WL 7306420, at *6 (same).

Next, the court has carefully considered Defendant's argument that Plaintiff could have chosen to specifically exclude class arbitration in the terms of the Agreement and that the doctrine of expressio unius est exclusio alterius ("the expression of one thing excludes another") applies. The court notes that at least one other court has acknowledged such argument as unpersuasive. See Opalinski II, 2015 WL 7306420, at *6 ("Mere absence of explicit exemption, without more, does not evince an intent to permit classwide arbitration."). The court also notes that the types of matters excluded in the Agreement cover types of substantive legal claims (workers compensation and ERISA), which differ in category from a class action, which is a procedural mechanism for simultaneously adjudicating multiple parties' claims. As recently

noted by the North Carolina Court of Appeals, "[u]nder the doctrine of expressio unius est exclusio alterius, when a statute lists the situations to which it applies, it implies the exclusion of situations not contained in the list." Patmore v. Town of Chapel Hill N. Carolina, 757 S.E.2d 302, 307 (N.C. Ct. App.) (quoting Evans v. Diaz, 430 S.E.2d 244, 247 (N.C. 1993)) (citations omitted). The doctrine, however, "does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." Id. (quoting Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003)). Thus, while Defendant's point is not lost on the court, the fact that the Agreement excludes ERISA and workers compensation claims but fails to exclude class arbitration does not allow the court to read the Agreement to include class action, as the items excluded are of a different "associated group" than a class action. The court is governed by the principle that a "party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." Id. at 684. Accordingly, the court will not read the absence of a term regarding class arbitration to mean that the parties agreed to class arbitration.

Considering Defendant's arguments as a whole, what Defendant essentially asks the court to do is infer is that because the arbitration agreement clearly contemplates bilateral arbitration and is intended to be read broadly, it must also contemplate class arbitration. This the court cannot do, as such a request flies in the face of binding precedent requiring the court to do exactly the opposite. See Stolt-Nielsen, 559 U.S. at 685 ("An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate."). The Agreement does not mention class arbitration. Despite

the fact that the Agreement is intended to be as broad as legally possible, Defendant cannot escape the fact that the Agreement is limited to disputes arising out of his, and only his, employment with Plaintiff. Given this court's duty to determine the intent of the parties from the document as a whole, and the significant differences in bilateral and class arbitration, there is nothing in the terms of the Agreement at issue that allows this court to conclusively determine that the parties had an agreement or meeting of minds as to class arbitration, implicitly or otherwise. Though the court finds that Defendant makes compelling arguments in support of its position, the court is ultimately not swayed by them and therefore finds that the Agreement does not extend to class arbitration.

**IV.　CONCLUSION**

In light of the facts and law discussed herein, the court finds that the Agreement at issue cannot be read to encompass class arbitration. In addition to the significant fact that the Agreement is silent on the issue of class arbitration, it is also limited to claims arising out of only Defendant's employment, not those of anyone else. The court has carefully considered the broad language of the Agreement and the obvious intent of the parties to arbitrate their disputes to the greatest extent possible within the bounds of the law. However, in light of the significant differences between class and bilateral arbitration discussed herein, the court does not believe that the terms of the Agreement indicate that class arbitration was an intended outcome of the Agreement. Accordingly, the court will grant Plaintiff's Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment (#17) is **GRANTED** and Defendant's Motion for Summary Judgment (#20) is **DENIED**.

**IT IS FURTHER ORDERED** that declaratory judgment is entered as follows: Defendant Jones is precluded from, and enjoined from further attempting to, arbitrate any claim against Plaintiff NCR on behalf of a purported class.

Signed: January 5, 2016

Max O. Cogburn Jr
United States District Judge